IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 3:22-CR-88-TAV-DCP |
| | ) | |
| JARVIS D. HARPER, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned for report and recommendation on Defendant Jarvis Harper's Motion to Suppress as Evidence the Contents of a Backpack Seized and Searched on October 25, 2021 [Doc. 20]. *See* 28 U.S.C. § 636(b). Defendant, who is charged with drug and firearms offenses, challenges the seizure and search of his backpack on Fourth Amendment grounds [*Id.*].

On October 25, 2021, law enforcement learned that Jarvis Harper ("Defendant"), the subject of several arrest warrants, was at a car wash on Merchants Drive in Knoxville, Tennessee. Officers located Defendant sitting on a bench at the car wash, handcuffed him, and searched his person incident to his arrest. Just before searching his person, officers removed Defendant's backpack, which he was wearing, uncuffing and re-cuffing one of Defendant's hands to do so. Officers seized a large amount of currency from Defendant's pockets. After placing Defendant in the back of a patrol car, officers searched the backpack and seized a handgun and multiple controlled substances from the backpack. Defendant argues that the officers had no lawful basis to search his backpack without a search warrant.

For the reasons discussed below, the Court finds the officers could not properly search Defendant's backpack incident to his arrest and the Government has not demonstrated the

1

backpack's contents inevitably would have been discovered during an inventory search. However, the Court finds that the officers acted in good faith to maintain the evidence on the scene and, thus, the exclusionary rule does not apply to suppress the contents of the backpack. Accordingly, the Court respectfully recommends that Defendant's Motion to Suppress [Doc. 20] be denied.

## I.    BACKGROUND

Defendant Harper is charged with possession of five grams or more of methamphetamine (Count One) and a detectable amount of cocaine base (Count Two) with intent to distribute [Doc. 3 p. 1]. He is also charged with possession of a firearm (defined as a "machine gun") in furtherance of drug trafficking (Count Three) and being a felon in possession of a firearm (Count Four) [*Id*. at 2]. All four offenses allegedly occurred on October 25, 2021 [*Id*. at 1–2]. These charges arise from the evidence seized during the search of Defendant's backpack at the time of his arrest.

On January 6, 2023, Defendant moved to suppress all evidence obtained from the search of his backpack, arguing that the backpack was not properly searched incident to his arrest and that officers should have obtained a search warrant [Doc. 20].[1] The Government responded in opposition, conceding the backpack could not be searched incident to Defendant's arrest but asserting the officers properly conducted an inventory search of the backpack [Doc. 26]. It also maintained that even if the search ran afoul of the Fourth Amendment, the Court should not exclude the evidence seized from the backpack because the officers acted in good faith [*Id*.].

The parties appeared before the undersigned on March 10, 2023, for an evidentiary hearing on the motion. Assistant United States Attorneys Alan Scott Kirk and Russ Swafford

---

[1]    Defendant also filed a Motion to Dismiss Count Four of the Indictment [Doc. 21], which will be addressed separately.

2

appeared on behalf of the Government. Assistant Federal Defenders Jonathan A. Moffatt and Christopher Meadows represented Defendant, who was also present. The Court heard the evidence and arguments presented by the parties. At the hearing, Defendant asked to file post-hearing briefs after preparation of a transcript [Doc. 35 p. 52], and the Court granted that request [*Id*. at 69]. Defendant filed a post-hearing brief on April 18, 2023 [Doc. 38]. The Government filed a responding brief on May 12, 2023 [Doc. 42]. Thereafter, the Court took the matter under advisement.[2]

## II. SUMMARY OF THE EVIDENCE

At the March 10, 2023 evidentiary hearing, the Government presented the testimony of Officer Dylan Bradley, who testified that he has worked for the Knoxville Police Department ("KPD") for six years, is currently assigned to the organized crime unit, and before that was a patrol officer [Doc. 35 p. 5].[3] He stated that as an interdiction officer on the organized crime unit, he is trained to identify and intercept illegal narcotics [*Id*. at 6]. Officer Bradley said he participated in the arrest of Defendant Harper on October 25, 2021 [*Id*.]. He said in October 2021, the KPD was looking for Defendant, who had several arrest warrants and had fled from police on more than one occasion [*Id*. at 6–7]. According to Officer Bradley, on October 8, 2021, Defendant was seen with a handgun, and nearly struck two officers as he fled [*Id*. at 7–8; Exh. 2 p. 5]. He stated that on October 24, 2021, an officer approached Defendant, who fled in a

---

[2]     On May 23, 2023, the Court permitted [Doc. 43] Defendant to file a second Motion to Dismiss Count Four of the Indictment, alleging Defendant's prior conviction did not constitute a felony under federal law [Doc. 44]. The Government responded in opposition on June 19, 2023 [Doc. 49]. The parties appeared for oral argument on the second motion to dismiss on August 3, 2023 [Doc. 53]. The Court requested supplemental briefing on the issues. Defendant filed a supplemental brief on August 16, 2023 [Doc. 54]. The Government's responding brief is due on September 15, 2023 [*See* Doc. 56].

[3]     The transcript of the March 10, 2023 evidentiary hearing was filed on March 16, 2023 [Doc. 35].

3

black Chevrolet Malibu with tag number 9X30A1 [Doc. 35 p. 9; Exh. 3 p. 2]. Officer Bradley said he was familiar with Defendant's face from a photograph on a wanted bulletin distributed to KPD officers through departmental email [Doc. 35 pp. 13–14].

Officer Bradley said that after the October 24 incident, law enforcement entered the tag number for the Malibu into the Flock camera system, which is the system of license plate readers located throughout Knoxville [*Id*. at 11]. He stated that on October 25, he received a Flock alert that the Malibu was in the area of Merchants Drive and Merchants Center Boulevard [*Id*. at 12]. Officer Bradley said upon receiving that alert, he and the other members of the west-side patrol unit converged on that area, and he spotted the vehicle in the vacuum line at Simoniz Car Wash [*Id*. at 12–13].

Officer Bradley testified about a video recording from Officer Steven Henderson's body camera [*Id*. at 14–16; Exh. 1]. The video recording shows Officer Henderson exit his patrol car, ask an employee who brought in the black car, and then walk up to a black male, wearing a hooded jacket and a backpack, sitting on a bench outside the car wash [Exh. 1 at 11:29:33–52]. Officer Henderson asked the man, "Are you Jarvis?" and for identification, and the man replied that he did not have any identification [Exh. 1 at 11:29:50–55]. Officer Henderson directed the man to stand and handcuffed him, while the man was still wearing the backpack [Exh. 1 at 11:29:56–11:30:10]. At this point, Officer Bradley and another officer had arrived [*Id*.]. The man continued to deny that he had identification [Exh. 1 at 11:30:10–20]. Officer Henderson escorted the man to the front of a patrol car and again requested identification or the man's social security number [Exh. 1 at 11:30:22–11:31:09]. After removing the man's hood, sunglasses, and balaclava, Officer Henderson confirmed that the man was Jarvis Harper by comparing him to a

photograph on the officer's cellphone [Exh. 1 at 11:31:40–47]. Officer Henderson then told Defendant that he was under arrest [Exh. 1 at 11:31:50].

The video recording shows that with the assistance of another officer, Officer Henderson removed one handcuff, removed Defendant's backpack, replaced the handcuff, and placed the backpack on the hood of the patrol car [Exh. 1 at 11:31:52–11:32:16]. The officers then searched Defendant's person, removed a large amount of currency from his pockets, and escorted him to a patrol car [Exh. 1 at 11:32:20–11:33:45]. Officer Bradley unzipped and looked inside the backpack, approximately three minutes after it was removed from Defendant's person [Exh.1 at 11:35:20]. Approximately two and one-half minutes later, Officer Bradley searched the backpack, removing a gun, medication bottles, and suspected controlled substances in clear plastic baggies from the backpack and placing them on the hood of the patrol car [Exh. 1 at 11:37:40–11:40:50].

Officer Bradley stated that he prepared a report of the incident later that day [Doc. 35 p. 16; Exh. 4]. This report lists Defendant's outstanding warrants [Doc. 35 p. 17; Exh. 4 p. 4]. Officer Bradley said he searched Defendant's backpack incident to his arrest [Doc. 35 p. 17]. He testified that KPD General Order 5.9 provides the procedures for warrantless searches and for handling seized property [*Id*. at pp. 17–18; Exh. 7 pp. 2–3]. He affirmed that this policy was in effect at the time of Defendant's arrest on October 25, 2021 [Doc. 35 p. 18]. He also stated that KPD General Order 2.3, effective November 2017, relates to inventory searches [*Id*. at 19–20; Exh. 6 pp. 4–5]. Officer Bradley said because Defendant had been arrested, all property seized from Defendant and not of evidentiary value would be inventoried pursuant to KPD policy and transported with Defendant to the Knox County jail [Doc. 35 p. 20]. He identified the seven-page inventory report for the items seized from Defendant [*Id*.; Exh. 5]. Officer Bradley said the

firearm and other items seized from Defendant's backpack are included on the inventory report [Doc. 35 p. 21]. He agreed that the inventory contains a photograph of the gun and stated the black, cube-shaped device on the back of the gun is an "aftermarket switch," which makes the gun "fully automatic" [*Id*. at 20].

On cross-examination, Officer Bradley testified that when he first encountered Defendant, Defendant was wearing a backpack on his back [*Id*. at 23, Exh. 9 at 11:30].[4] He agreed that the zippers on Defendant's backpack were closed [*Id*. at 24]. Officer Bradley stated that after he handcuffed Defendant, Defendant remained handcuffed during his arrest except for when his handcuff was briefly removed to take off the backpack [*Id*.].

Officer Bradley stated that a female Tony Thomas, who was waiting with Defendant on the bench at the car wash, was also detained and handcuffed [*Id*. at 24–25]. He agreed that Ms. Thomas was not arrested and was eventually permitted to leave [*Id*. at 25]. He also agreed Ms. Thomas was driving a BMW, which was not searched, nor the subject of a sniff by a drug detection dog [*Id*. at 25–26]. Officer Bradley said the officers were aware that Ms. Thomas knew Defendant [*Id*.]. He thought Ms. Thomas was going to follow Defendant to Enterprise rental company to return his car and then give him a ride [*Id*.].

Officer Bradley agreed that at 11:32 on the video recording from Officer Henderson's body camera, Defendant was formally under arrest [*Id*. at 26; Exh. 9 at 11:32]. He said officers then searched Defendant's person so that he could be secured in the back of a patrol car [Doc. 35 p. 26]. Officer Bradley agreed that Defendant was secured in the back of a patrol car after he was searched and before his backpack was unzipped and searched [*Id*. at 27–28; Exh. 9 at

---

[4]     Defendant introduced a second copy of the video recording from Officer Steven Henderson's body camera [Exh. 9]. This recording contains the same footage as Exhibit 1 and contains additional footage.

11:33:50].  He agreed that the patrol car has bars on the back windows to prevent the occupant of the backseat from getting out [Doc. 35 p. 27].  He also agreed that Defendant was handcuffed when he was placed in the back of the patrol car [*Id.*].  He said Defendant did not leave the patrol car after being placed inside, nor was Defendant able to leave the patrol car [*Id.* at 28].  Officer Bradley did not recall whether a drug detection dog was deployed around Defendant's Malibu, but he stated the vehicle was searched because the KPD towed it [*Id.* at 27].

Officer Bradley stated that at the time of Defendant's arrest, KPD officers were permitted to mute their microphones when talking with other officers [*Id.* at 28].  He said this policy has since changed [*Id.*].  He agreed that the time stamps on the video recording are accurate and that the arrest of Defendant occurred around noon [*Id.* at 29].  Officer Bradley stated that at 11:35:27 on the video recording from Officer Henderson's body camera, Defendant's backpack is unzipped [*Id.* at 29–30; Exh. 9 at 11:35:27].  He said the firearm was visible on top as soon as the backpack was unzipped [Doc. 35 pp. 29–30].  He agreed that KPD officers can seek a search warrant from a judicial commissioner, and that a judicial commissioner is available any time during the day or night [*Id.* at 30].  He agreed that federal magistrate judges are also available to issue a search warrants [*Id.* at 30–31].

Officer Bradley agreed that at least seven KPD officers were on the scene [*Id.* at 32–33; Exh. 9 at 11:35:32].  He stated that the Malibu is visible on the recording and that the trunk is open because the car wash employees were vacuuming it, not because it was being searched [Doc. 35 p. 32; Exh. 9 at 11:35].  Officer Bradley also testified about the video recording from another officer's body camera [Doc. 35 p. 33; Exh. 10].[5]  He agreed that at 11:31:39 on this recording, Defendant is handcuffed [Doc. 35 p. 33; Exh. 10 at 11:31:39].  Officer Bradley also

---

[5]     Defense counsel was not able to identify the officer from whose body camera the recording was made [Doc. 35 pp. 32–33].

agreed that at 11:34:07 in this recording, a search of the Malibu is underway [Doc. 35 pp. 33–34; Exh. 10 at 11:34:07]. He agreed that the search of the Malibu was in progress before Defendant's backpack was unzipped [Doc. 35 p. 34; Exh. 10 at 11:34:20]. Officer Bradley acknowledged that at 11:36:47, the officers were discussing whether to tow the Malibu [Doc. 35 pp. 34–35; Exh. 11:36:47]. He said officers on the scene can determine whether to tow a vehicle, and here, the officers were discussing whether Officer Geddings, the officer from whom Defendant had previously fled, wanted a hold placed on the vehicle to be towed or whether it would be towed in the normal fashion [Doc. 35 p. 35].

Officer Bradley agreed that at 11:37:26 on the recording, he states that because Defendant was wearing the backpack, they can process it then, rather than awaiting the arrival of the crime laboratory employees, and another officer agrees [*Id.* at 35–36; Exh. 10 at 11:36:47–11:37:26]. He acknowledged that after that discussion, the backpack was searched [Doc. 35 p. 36].

Officer Bradley testified that KPD General Order 5.9 discusses the search of a vehicle, rather than of containers [*Id.* at 36 – 38]. He agreed that the Order provides that in making a lawful arrest, an officer may search areas under the subject's immediate control but does not mention containers, bags, or purses [*Id.* at 38]. Officer Bradley further agreed that property of evidentiary value is processed, rather than inventoried and transported with the arrestee [*Id.*]. He said Officer Strickenberger, the ATF liaison, helped him confiscate the evidence that day [*Id.* at 39]. He agreed that the firearm was provided to the ATF, and the controlled substances were sent to the DEA that day [*Id.*]. Officer Bradley stated that when he opened Defendant's backpack, he was searching Defendant's property to be inventoried [*Id.* at 39]. He explained that

when he said that they could process the backpack because Defendant was wearing it, this was after the officers had seen the firearm in Defendant's backpack [*Id.* at 40].

## III. FINDINGS OF FACT

Based upon the testimony and evidence from the evidentiary hearing, the undersigned makes the following factual findings:

On October 25, 2021, law enforcement was on the lookout for Defendant Jarvis Harper, who was the subject of multiple arrest warrants, including warrants for fleeing from officers, reckless endangerment, and possession of a handgun by a convicted felon. Defendant had fled from officers in a black Chevrolet Malibu with tag number 9X30A1 the day before. Through its license plate reader system and the observations of officers, law enforcement located the Malibu at the Simoniz Car Wash on Merchants Drive. KPD Officer Steven Henderson found Defendant, who was wearing a brown leather backpack, seated on a bench outside the car wash. Officer Henderson seized Defendant, handcuffed him, and escorted him to the front of a patrol car. There officers confirmed that Defendant was Jarvis Harper by comparing him to a photograph. Officer Henderson then told Defendant he was under arrest.

Another officer assisted Officer Henderson in removing one of Defendant's handcuffs, removing the backpack from Defendant, and replacing the handcuff. Officer Henderson placed the backpack on the hood of the patrol car. The officers searched Defendant and removed more than $17,000 from his pockets.[6] Defendant, who was still handcuffed, was then secured in the backseat of the patrol car. While officers were searching Defendant's person, other officers were searching the Malibu, which was located across the parking lot. Defendant's associate Tony Thomas, who was seated beside him on the bench, was also detained and handcuffed.

---

[6]     The amount of currency seized from Defendant's person was stated in Officer Bradley's incident report [Exh. 4 p. 4].

Approximately three minutes after Defendant was searched and placed in the patrol car, KPD Officer Dylan Bradley began a search of the backpack to inventory its contents, unzipped it, and saw a handgun inside. Two and one-half minutes later, Officer Bradley searched the backpack, removing its contents including the firearm and multiple suspected controlled substances. The contents of the backpack were recorded on a KPD Property Inventory Report, the firearm and controlled substances were turned over to federal agencies as evidence, and the Malibu was towed by law enforcement. Defendant was transported to the police station, and Ms. Thomas was released and permitted to leave in her vehicle, which was not searched.

## IV. ANALYSIS

The Fourth Amendment protects the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. In this respect, a judge shall not issue a warrant for the search of a person, home, or personal property except upon a finding of "probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id*. Warrantless seizures are "'per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *United States v. Roark*, 36 F.3d 14, 17 (6th Cir. 1994) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). In a warrantless search, the government shoulders the burden of demonstrating that an exception to the warrant requirement applies. *United States v. Akrawi*, 920 F.2d 418, 421 (6th Cir. 1990) (citing *United States v. Jeffers*, 342 U.S. 48, 51 (1951)).

Here, the Court examines whether the warrantless search of Defendant's backpack at the scene of his arrest falls within an exception to the warrant requirement, specifically whether it could be searched incident to his arrest. The Court also examines whether the contents of the backpack would have been inevitably discovered during an inventory search. Finally, the Court

addresses the Government's argument that the evidence should not be excluded because the officers acted in good faith.

### A. Search Incident to Arrest

When an officer makes a lawful custodial arrest based on probable cause, the officer is permitted to search the arrestee's person and areas in the arrestee's "'immediate control'" without a warrant and incident to the arrest. *Davis v. United States*, 564 U.S. 229, 232 (2011) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969) (construing area within arrestee's immediate control "to mean the area from within which he might gain possession of a weapon or destructible evidence")). A warrantless search incident to arrest is permitted to secure weapons for officer safety and to seize evidence to prevent its loss or destruction. *Chimel*, 395 U.S. at 762–63. The search-incident-to arrest exception is "generally limited to 'personal property . . . immediately associated with the person of the arrestee.'" *United States v. McCants*, No. 2:22-CR-20320-TGB-APP, 2023 WL 4068565, at *9 (E.D. Mich. June 16, 2023) (quoting *Riley v. California*, 573 U.S. 373, 384 (2014)). Defendant argues his backpack was not within his immediate control because, at the time it was searched, he was handcuffed and secured in the back of the patrol car [Doc. 20 p. 3; Doc. 38 pp. 4–5].

In the vehicle context, a search "incident to the arrest of a recent occupant is justified only if the arrestee was unrestrained and within reaching distance of the passenger compartment at the time of the search, or if it was reasonable for the arresting officers to believe that evidence relevant to the crime of arrest might be found in the vehicle." *United States v. Burford*, 632 F.3d 264, 269 (6th Cir. 2011) (citing *Arizona v. Gant,* 556 U.S. 332, 351 (2009)). In *McCants*, the court applied this precedent to the warrantless search of a backpack seized from an arrestee who was handcuffed and separated from his bag. 2023 WL 4068565, at *9. There, the backpack

could not be searched incident to the defendant's arrest because the defendant was "wholly unable to access the bag at the time the investigators opened and searched it." *Id. Compare United States v. Mincy*, No. 1:20-cr-61, 2022 WL 17176398, at *5 (S.D. Ohio Nov. 23, 2022) (determining search-incident-to-arrest exception "barely" applied when officer looked in arrestee's drawstring bag immediately after removing it from his person as he stood handcuffed beside the officer). The same is true in this case because Defendant was detained in the back of a patrol car when Officer Bradley unzipped the backpack. Accordingly, as the Government concedes [Doc. 26 pp. 5, 7–8], the search-incident-to-arrest exception does not apply to the search of Defendant's backpack.

## B. Inevitable Discovery and the Inventory Search

The Government argues that the officers inevitably would have discovered the contents of the backpack upon inventorying it pursuant to KPD policy [Doc. 26 p. 8; Doc. 42 pp. 1–2, 10–14]. Defendant contends the inevitable discovery doctrine does not apply because the Government has not shown the backpack was searched pursuant to KPD's specific inventory procedures and because the officers instead searched the backpack as part of their investigation [Doc. 38 pp. 5–10].

"[T]he inevitable discovery doctrine allows for the admission of evidence that would have been discovered even without the unconstitutional source." *United States v. Cooper*, 24 F.4th 1086, 1091 (6th Cir. 2022) (quoting *Utah v. Strieff*, 579 U.S. 232, 238 (2016)). The doctrine is an exception to the exclusionary rule and "applies when there is an independent, untainted investigation that was bound to uncover the same evidence" or "when other compelling facts demonstrate that discovery was inevitable." *Id.* at 1092 (internal quotations omitted). The Court examines whether, absent the constitutional violation, the search: (1) could have occurred

through "lawful means," and (2) would have occurred, in that it "ultimately" or "inevitably" would have taken place. *Id*. at 1093–94. In conducting this analysis, the Court looks for "useful guideposts" such as whether routine practices were in place or "evidence of police officers' intentions." *Id.* at 1094.

"The government can establish inevitable discovery 'by showing that routine procedures that police would have used regardless of the illegal search would have resulted in the discovery of the disputed evidence.'" *United States v. James*, No. 17-5994, 2018 WL 7482185, at *1 (6th Cir. Sept. 4, 2018) (quoting *U.S. v. Ford*, 184 F.3d 566, 577 (6th Cir. 1999)). The government must make this showing by a preponderance of the evidence. *United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995). The Court reviews the circumstances "as they existed at the instant before the unlawful search" to determine "what would have happened had the unlawful search never occurred." *United States v. Hodge*, 714 F.3d 380, 387 (6th Cir. 2013) (internal quotation omitted). Thus, if an inventory search would have occurred following Defendant Harper's arrest, the inevitable discovery doctrine applies to save the evidence seized from the backpack from exclusion.[7]

Officer Bradley testified that following Defendant's arrest, all property taken from Defendant and not of evidentiary value would have been transported with Defendant to the Knox County jail [Doc. 35 p. 20]. He said that the Defendant's property would have been inventoried pursuant to KPD policy [*Id*.]. Officer Bradley testified that the contents of Defendant's

---

[7]    An inventory search is also an exception to the warrant requirement. *Colorado v. Bertine*, 479 U.S. 367, 371 (1987) ("[I]nventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment."). However, here, Officer Bradley testified that he searched Defendant's backpack incident to his arrest. Thus, the Court considers the propriety of an inventory search in the context of the inevitable discovery doctrine, examining whether the KPD would have conducted an inventory search of the backpack, had the illegal search incident to arrest not occurred.

13

backpack were included on the KPD Property Inventory Report [*Id*. at 21; Exh. 5]. On cross-examination, Officer Bradley stated that when he unzipped Defendant's backpack, he "was searching for property to be inventoried" [Doc. 35 p. 39]. He said upon seeing the firearm, he knew the backpack contained evidence that needed to be "processed" and that an ATF liaison helped him "confiscate" the firearm and contraband [*Id*. at 38–40]. Officer Bradley testified that when he told the other officers that they could "process" the backpack at the scene, he had already unzipped it and seen the gun inside [*Id*. at 39–40].

"An inventory search is a recognized exception to the Fourth Amendment's warrant requirement: where the police are in lawful custody of a vehicle, they may conduct an inventory search to catalogue its contents pursuant to standardized criteria." *United States v. Alexander*, 954 F.3d 910, 915 (6th Cir. 2020) (citing *Florida v. Wells*, 495 U.S. 1, 4 (1990); *Colorado v. Bertine*, 479 U.S. 367, 375–76 (1987)). The purpose of an inventory search is to affirm the vehicle contains no harmful items, to secure items of value, and to protect the impounding law enforcement agency against false claims that items have been lost or damaged. *United States v. Snoddy*, 976 F.3d 630, 633–34 (6th Cir. 2020). An inventory search is valid if law enforcement has lawful custody of property, *United States v. Smith*, 510 F.3d 641, 651 (6th Cir. 2007), and acts according to a defined policy, which need not be written, *Alexander*, 954 F.3d at 915. An inventory search must be executed pursuant to routine law enforcement procedures and may not be performed for the purpose of investigation. *Snoddy*, 976 F.3d at 634; *Alexander*, 954 F.3d at 916. Defendant argues that the search of his backpack fails both requirements.

As stated, an inventory search must be conducted pursuant to routine police procedures. *United States v. Jackson*, 682 F.3d 448, 454 (6th Cir. 2012). Inventory policies must guide both when law enforcement may take custody of the property and the manner of the inventory search

14

to remove officer discretion from the creation of an inventory. *Alexander*, 954 F.3d at 915. Here, the Government introduced KPD General Order No. 2.3, relating to transportation of prisoners, which states that a prisoner's property that is not capable of use as a weapon, is not contraband, and is not evidence shall be transported with the prisoner, either by being returned to him or her or given to the transporting officer [Exh. 6 p. 5].[8]  The General Order further provides that "[p]roperty belonging to the prisoner which has been taken by [the] arresting officer shall be turned over to the Transportation Officer or [the] officer responsible for transport" [Exh. 6 p. 13 (Section III.E.5)].  Any property, such as evidence, weapons, or contraband resulting in criminal charges, shall be "confiscated" by the arresting officer and "processed for court presentation" [Exh. 6 p. 13 (Section III.E.5–6)].  Based on these provisions, the Court finds the Government has shown that the KPD has procedures directing officers to take custody of an arrestee's property that is on the arrestee's person at the time of his or her arrest.

However, the Court agrees with Defendant that the Government has not shown the policy for inventorying property once it is in police custody.  Instead, the Government provides only the policy for logging items of evidentiary value:  General Order No. 5.9 provides that items seized by law enforcement during a warrantless search "are to be properly logged and secured in the

---

[8]     General Order 2.3 provides that "[a]ll prisoners taken into custody by members of the Knoxville Police Department shall be controlled and searched in a thorough manner prior to transport to protect the safety of others and provide for security of the prisoner."  [Exh. 5 pp. 4–5].  Section II.C. further provides that "[p]ersonal items such as money, jewelry, wallets and other items that could not be used as a possible weapon, contraband or evidence, shall be inspected by the searching officer and then returned to the prisoner.  If the suspect will be transported by the Transportation Vehicle, a specially designed truck or van, then the officer will give the prisoner's property to the Transportation Officer."  [Exh. 5 p.5].

15

Property Office on the 2nd floor (See General Order 7.3 Property Management)"[9] [Exh. 7 p. 3 (Section VII.)]. Sixth Circuit caselaw is "clear that there must be some set of guiding principles that govern the scope of inventory searches." *Alexander*, 954 F.3d at 916 ("Even though there existed regulations governing when inventory searches were permissible, there were no established procedures that governed how the inventory searches were to be conducted."). Officers may exercise discretion in conducting an inventory search "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Bertine*, 479 U.S. at 375. Here, the Court has no information on the criteria governing the manner and scope of an inventory search and must assume that the search of Defendant's backpack would have been the product of Officer Bradley's unguided discretion. *Alexander*, 954 F.3d at 916.

Defendant also argues that Officer Bradley's search of his backpack was undertaken as a part of his investigation, rather than to prepare an inventory of its contents. Not only must an inventory be conducted pursuant to established police procedures but also it cannot be undertaken "for the sole purpose of investigation." *Bertine*, 479 U.S. at 372. An officer's suspicions that he or she may locate contraband do not invalidate an inventory search that is otherwise proper. *Alexander*, 954 F.3d at 915. However, officers must follow a standard criteria or routine procedures to assure that the inventory search "is not a ruse for a general rummaging in order to discover incriminating evidence." *Id*. (internal quotation omitted).

In *McCants*, after rejecting the search-incident-to-arrest exception for the search of defendant's backpack, the court examined whether the contents of the backpack would have been

---

[9] General Order 7.3 on property management was not provided to the Court. Nor did Officer Bradley testify about the procedures for inventorying the contents of a container like a backpack if that property was to be transported with the arrestee, rather than confiscated.

16

inevitably discovered via an inventory search. 2023 WL 4068565, at *10–13. There, similar to here, the government failed to show procedures that would have guided the officers' search of the backpack, either on the scene or at the jail.[10] *Id.* at *12. The court also observed that "the reality here is that McCants's backpack was not searched to take an inventory of what property it contained. It was searched because a drug-sniffing dog alerted to the presence of narcotics in the bag." *Id.* The court suppressed the evidence seized from defendant's backpack, finding that to hold otherwise would negate the deterrent effect of the exclusionary rule:

> The goal of the exclusionary rule is to discourage officers from ignoring their obligation to obtain a search warrant when they wish to search a place where a person has a reasonable expectation of privacy. When it comes to searching a passenger's luggage, this deterrent effect would be weakened to the point of non-existence if officers knew that once they had probable cause (either to arrest the person or search his bag), they could forego a warrant and search luggage immediately—safe in the assumption that, eventually ("inevitably"), the bag would be subjected to an inventory search once the suspect was in custody. For the evidence to be admissible, the government needed a warrant or more exacting proof of firmly-established department-wide [inventory] policies. The proper procedure here would have been to seize the bag and seek a warrant to search it.

*Id.* at *13.

This case is distinct from *McCants* in that the officers did not conduct a dog sniff of the backpack, although at one point an officer mentions that a drug dog was on the scene. Instead, Officer Bradley said he searched Defendant's backpack incident to his arrest. He testified that he

---

[10]     Here, the Government provided the KPD procedures for searching and transporting prisoners (General Order 2.3) and warrantless searches (General Order 5.9). The Court finds these procedures govern when an officer should seize property but do not explain how the officer is to conduct an inventory of that property once seized. For example, General Order 5.9 states that "[i]tems which are seized . . . [during a warrantless search] are to be properly logged and secured in the Property Office on the 2nd floor (See General Order 7.3 Property Management)" [Exh. 7 p. 3]. General Order 7.3 was not provided, nor was any procedure for inventorying property that was not "confiscated" by the arresting officer [Exh. 6 p.13].

unzipped the backpack to begin an inventory search; however, upon looking inside, he saw the backpack contained an item—the gun—that would need to be confiscated, rather than inventoried. After Officer Bradley unzipped the backpack and the firearm was visible, the video recording reveals Officer Henderson said, "Let's get Crime Lab down here," and asked, "Did he use that in any of his crimes?" [Exh.10 at 11:35:25–28]. Following a discussion of whether to wait for the crime laboratory technicians to come to the scene or to meet them at the police station, Officer Bradley opined the officers could "process" the backpack themselves, and Officer Henderson agreed [Exh. 10 at 11:37:10–25]. Officer Bradley then proceeded to search the backpack. In the absence of any guiding policies on inventory searches, the Court cannot find the search of the backpack conformed to KPD policies or that the contents of the backpack would have been inevitably discovered.

### C. Good Faith Exception to Exclusionary Rule

"The fact that a Fourth Amendment violation occurred—*i.e.*, that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies." *Herring v. United States*, 555 U.S. 135, 140 (2009). The exclusion of evidence for a Fourth Amendment violation is not a right, but instead, the exclusionary rule is employed "only where it 'result[s] in appreciable deterrence.'" *Id*. at 141 (quoting *United States v. Leon*, 468 U.S. 897, 909 (1984)). Accordingly, "[t]o trigger the exclusionary rule, the police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id*. at 144.

Relying on *Herring*, the Government argues that the Court should not apply the exclusionary rule because the officers acted reasonably and in good faith when they searched Defendant's backpack [Doc. 26 p. 10]. It asserts that any unconstitutional conduct on the part of

the officers was not sufficiently deliberate such that exclusion would provide meaningful deterrence of similar conduct [*Id*. at 11]. Instead, it contends that from their initial contact with Defendant, the officers acted reasonably and in good faith [*Id*.]. They identified Defendant as having five outstanding warrants, arrested him, and searched him incident to his arrest [*Id*. at 11–12].

The Government contends that Officer Bradley searched Defendant's backpack in compliance with KPD policy, which aligns with pre-*Gant* caselaw [Doc. 42 pp. 8–9]. It asserts that General Order 5.9, last revised on March 7, 2012, provides that an officer "making a lawful arrest may search areas under the immediate control of the [arrestee], including a path of flight[, but t]he search must be confined to that area with which the arrestee could gain possession of a weapon or destroy evidence" [Doc. 42 p. 8; Exh. 7 pp. 2–3]. In *Northrop v. Trippett*, the Sixth Circuit held "the right to search an item incident to arrest exists even if that item is no longer accessible to the defendant at the time of the search. So long as the defendant had the item within his immediate control near the time of his arrest, the item remains subject to a search incident to arrest." 265 F.3d 372, 379 (6th Cir. 2001). The Government argues that this case has not been expressly overruled and that Officer Bradley acted in good faith in relying on the KPD policy and pre-*Gant* precedent. *See United States v. Schuttpelz*, 467 F. App'x 349, 352–53 (6th Cir. 2012) (holding that "evidence cannot be excluded under *Gant* where the Government's search was undertaken with reasonable reliance on existing law at the time"); *Buford*, 632 F.3d at 276–77 (holding "a police officer who reasonably relies on settled circuit precedent that authorizes the search of a vehicle acts in objective good faith . . . even if a higher court later overrules the settled interpretation of the law").

19

The Court questions the Government's interpretation of General Order 5.9 as permitting a search incident to arrest once the item is no longer accessible to the arrestee. The plain language of the policy limits the search incident to arrest "to that area within which the arrestee *could gain* possession of a weapon or destroy evidence" [Exh. 7 p. 3 (emphasis added)]. The backpack on the hood of the patrol car was not an area to which Defendant could gain access once he was handcuffed and detained inside the patrol car. Moreover, General Order 5.9 states that officers should be knowledgeable about the circumstances in which a search is permitted under the federal Constitution [*Id.*]. Finally, the cases relied upon by the Government address situations in which the law changed after the search was conducted. Here, Officer Bradley searched Defendant's backpack more than ten years after the Supreme Court decided *Gant*. Accordingly, the narrow circumstances addressed in *Schuttpelz* and *Buford* do not apply here.

The Court, however, can still find Officer Bradley acted in good faith even if he mistakenly believed he could search the backpack incident to Defendant's arrest. The purpose of excluding evidence obtained in violation of the Fourth Amendment is to deter future Fourth Amendment violations by law enforcement. *Herring*, 555 U.S. at 135, 139–40 (2009) (citing *United States v. Calandra*, 414 U.S. 338, 347–48 (1974) (observing that the exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect")). Thus, the Court must examine the officers' actions considering (1) whether application of the exclusionary rule will result in future deterrence and (2) whether the "'benefits of deterrence . . . outweigh the costs' to the justice system of letting culpable individuals go free." *United States v. Godfrey*, 427 F. App'x 409, 411 (6th Cir. 2011) (quoting *Herring*, 555 U.S. at 699–701) (applying test from *Herring* to evidence seized in warrantless stop of vehicle). This Circuit characterizes the *Herring* test as a "balancing test" in

20

which the benefits of deterrence must outweigh the costs of suppression. *United States v. Master*, 614 F. 3d 236, 243 (6th Cir. 2010). When law enforcement is "responsible for the unconstitutional error, suppression is necessary only if the police conduct is deliberate, reckless, or grossly negligent, or in some circumstances [due to] recurring or systemic negligence." *Godfrey*, 427 F. App'x at 411 (citation omitted). The analysis in *Herring* favors "preserving evidence for use in obtaining convictions, even if illegally seized, [over] excluding evidence in order to deter police misconduct unless the officers engage in deliberate, reckless, or grossly negligent conduct." *Id.* at 412 (citation omitted).

Here, the backpack was on Defendant's person at the time of his arrest. The officers removed one handcuff, took the backpack off Defendant, and re-cuffed him, so that they could place him in the patrol car. This complied with General Order 2.3 requiring that prisoners be thoroughly searched prior to transport in order "to locate and confiscate all possible weapons, contraband and evidence" [Exh. 6 pp. 4–5]. In other word, the officers could not place Defendant in the patrol car while he was wearing his backpack because it could contain a weapon or contraband.

After placing Defendant in the patrol car, the officers sought to properly process the items seized from Defendant, obtaining a currency envelope for the large amount of money seized from his pockets, beginning to inventory the contents of the backpack, and then discussing whether to call evidence technicians to the scene when they discovered the gun. Officer Bradley's erroneous belief that he could search the backpack incident to Defendant's arrest does not negate good faith. "An error in judgment or a mistake that is not systematic does not amount to being deliberate, reckless, or grossly negligent." *United States v. Master*, 491 F. App'x 593, 596 (6th Cir. 2012). In this regard, the Court notes that if Officer Bradley had unzipped

Defendant's backpack while Defendant was wearing it or even immediately after it was removed from his person, he may not have run afoul of the Fourth Amendment. *See Mincy*, 2022 WL 17176398, at *5 (finding search of drawstring bag was valid incident to arrest, although it was removed from arrestee's person and arrestee was handcuffed, because more than a "theoretical possibility" existed that the arrestee could access the bag while standing beside the officer) (internal quotation omitted).

As to the inventory search, Officer Bradley testified that because Defendant had been arrested, all property seized from Defendant and not of evidentiary value would be inventoried pursuant to KPD policy and transported with Defendant to the Knox County jail [Doc. 35 p. 20]. Based upon this testimony, the inventory exception seemingly applies. The undersigned, however, is constrained to find a Fourth Amendment violation because the Government did not introduce the KPD's inventory policies, thereby preventing the Court from analyzing whether the policy limited officer discretion and was followed. The undersigned discerns no culpability on the part of law enforcement for this omission, and thus, no deterrent benefit from suppression.

The undersigned balances the little to no deterrent benefit from exclusion against the significant cost of suppression. Defendant had a firearm and multiple controlled substances in his backpack. The cost of suppression is therefore high. Accordingly, the balance tips in favor of admitting the evidence at trial. After performing the balancing test from *Herring*, the undersigned finds that the evidence obtained from Defendant's backpack should not be suppressed.

## IV.   CONCLUSION

After carefully considering the parties' arguments and the relevant legal authorities, the undersigned finds the warrantless search of Defendant's backpack violated his rights under the

Fourth Amendment. The Court also finds the Government failed to carry its burden of showing the officers would have inevitably discovered the firearm and controlled substances in the backpack pursuant to an inventory search. Nevertheless, the Court finds that the officer searched the backpack in good faith. Accordingly, the undersigned respectfully **RECOMMENDS** that that Defendant's Motion to Suppress as Evidence the Contents of a Backpack Seized and Searched on October 25, 2021 [**Doc. 20**] be denied.[11]

Respectfully submitted,

Debra C. Poplin
United States Magistrate Judge

---

[11] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Tchrs*, 829 F.2d 1370, 1373 (6th Cir. 1987).

23