UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA,       )
                                )
                Plaintiff,      )
                                )
v.                              )       No.:   3:22-CR-88-TAV-DCP-1
                                )
JARVIS D. HARPER,               )
                                )
                Defendant.      )

## MEMORANDUM OPINION AND ORDER

This criminal matter is before the Court for consideration of the Report and Recommendation ("R&R") entered by United States Magistrate Judge Debra C. Poplin on September 11, 2023 [Doc. 57]. The R&R addresses defendant's "Motion to Suppress as Evidence the Contents of a Backpack Seized and Searched on October 25, 2021" [Doc. 20]. The government responded in opposition [Doc. 26]. Judge Poplin held a suppression hearing on March 10, 2023 [Doc. 31], and the parties subsequently filed post-hearing briefs [Docs. 38, 42]. Judge Poplin then issued the R&R [Doc. 57], recommending that the Court deny defendant's motion to suppress [Doc. 20].

Defendant has filed objections to the R&R [Doc. 67]. While the government did not initially respond to defendant's objections, the Court found that a response would be beneficial and ordered the government to file a response addressing the applicability of the good faith exception [Doc. 73]. Thereafter, the government filed a response [Doc. 74]. The matter is ripe for the Court's review. *See* E.D. Tenn. L.R. 7.1(a). For the reasons that follow, the Court will **OVERRULE** defendant's objections [Doc. 67], **ACCEPT** and

**ADOPT** the R&R [Doc. 57] in whole, and **DENY** defendant's motion to suppress [Doc. 20].

## I.    Background

The Court presumes familiarity with the facts of this case and will only recite facts necessary to the determination of the instant motion. Moreover, the Court notes that defendant does not object to any factual findings in Judge Poplin's R&R. Therefore, the Court references the summary of the evidence set forth in the R&R [Doc. 57, pp. 3–9]. Further, the Court will adopt the R&R's findings of fact as drawn from the testimony and evidence, including video recordings from officer body cameras, introduced at the evidentiary hearing as follows:

On October 25, 2021, law enforcement was on the lookout for Defendant Jarvis Harper, who was the subject of multiple arrest warrants, including warrants for fleeing from officers, reckless endangerment, and possession of a handgun by a convicted felon. Defendant had fled from officers in a black Chevrolet Malibu with tag number 9X30A1 the day before. Through its license plate reader system and the observations of officers, law enforcement located the Malibu at the Simoniz Car Wash on Merchants Drive. [Knoxville Police Department "KPD"] Officer Steven Henderson found Defendant, who was wearing a brown leather backpack, seated on a bench outside the car wash. Officer Henderson seized Defendant, handcuffed him, and escorted him to the front of a patrol car. There officers confirmed that Defendant was Jarvis Harper by comparing him to a photograph. Officer Henderson then told Defendant he was under arrest.

Another officer assisted Officer Henderson in removing one of Defendant's handcuffs, removing the backpack from Defendant, and replacing the handcuff. Officer Henderson placed the backpack on the hood of the patrol car. The officers searched Defendant and removed more than $17,000 from his pockets. Defendant, who was still handcuffed, was then secured in the backseat of the patrol car. While officers were searching Defendant's person, other officers were searching the Malibu, which was located across the

2

parking lot. Defendant's associate Tony Thomas, who was seated beside him on the bench, was also detained and handcuffed.

Approximately three minutes after Defendant was searched and placed in the patrol car, KPD Officer Dylan Bradley began a search of the backpack to inventory its contents, unzipped it, and saw a handgun inside. Two and one-half minutes later, Officer Bradly searched the backpack, removing its contents including the firearm and multiple suspected controlled substances. The contents of the backpack were recorded on a KPD Property Inventory Report, the firearm and controlled substances were turned over to federal agencies as evidence, and the Malibu was towed by law enforcement. Defendant was transported to the police station, and Ms. Thomas was released and permitted to leave in her vehicle, which was not searched.

[*Id.* at 9–10, footnote omitted; *see also* Doc. 35, Exhibits 1, 9, 10].

Defendant is charged in a four-count indictment with various drug and gun offenses stemming from the evidence seized during the search of his backpack at the time of arrest, with all four offenses allegedly occurring on October 25, 2021 [Doc. 3, pp. 1–2]. Specifically, defendant faces charges of possession of five grams or more of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) (Count One); possession of a detectable amount of cocaine base with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) (Count Two); possession of a firearm (defined as a "machine gun") in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c) (Count Three); and being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(e) (Count Four)[1] [*Id.*].

---

[1] Defendant also filed motions to dismiss Count Four of the indictment, arguing that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him [Doc. 21] and his 2017 conviction for failure to pay child support is not a felony under federal law [Doc. 44]. The magistrate judge issued a separate R&R [Doc. 75] recommending that both motions be denied, which remains pending before the Court.

3

## II.    Standard of Review

The Court generally reviews *de novo* those portions of the R&R to which a defendant has objected.  28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b).  "It is well-settled that upon a proper objection by a party, a district court must review de novo a magistrate judge's ruling on a motion to suppress." *United States v. Quinney*, 238 F. App'x 150, 152 (6th Cir. 2007).  Accordingly, the Court considers the R&R, the motion to suppress, the parties' underlying and supporting briefs, and defendant's objections, all in light of the applicable law.

Objections to a magistrate judge's R&R must be clear enough to enable the Court to discern the issues that are dispositive and contentious.  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 508–09 (6th Cir. 1991)).  "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Cole v. Yukins et al.*, 7 F. App'x 354, 356 (6th Cir. 2001).

"A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge.  An 'objection' that does nothing more than state a disagreement with a magistrate judge's suggested resolution, or simply summarizes what has been presented before, is not an 'objection[.]'" *VanDiver v. Martin et al.*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004).  If "objections merely restate the party's arguments raised … previously [and] addressed by the magistrate judge, then the Court may deem the objections waived." *Johnson v. Colvin*,

4

No. 3:13-CV-690, 2014 WL 7272326, at *2 (E.D. Tenn. Dec. 18, 2014) (citing *VanDiver*, 304 F. Supp. 2d at 937).

## III. Analysis

### A. The Good Faith Exception and the *Herring* Balancing Test

In *United States v. Leon*, 468 U.S. 897, 913, 922 (1984), the Supreme Court created a "good-faith exception to the Fourth Amendment exclusionary rule" when a law enforcement officer obtains evidence in "objectively reasonable reliance on a subsequently invalidated search warrant." Thus, pursuant to *Leon*, evidence obtained in violation of the Fourth Amendment may nonetheless be admissible in federal court if law enforcement acted in good faith in executing the search warrant.

In shaping the exclusionary rule following *Leon*, the Supreme Court in *Herring v. United States*, 555 U.S. 135 (2009), observed that "[t]he fact that a Fourth Amendment violation occurred—*i.e.*, that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies." *Id.* at 140 (citing *Illinois v. Gates*, 462 U.S. 213, 223 (1983)). In other words, "suppression is not an automatic consequence of a Fourth Amendment violation." *Id.* at 137. The exclusion of evidence for a Fourth Amendment violation is "not an individual right and applies only where it 'result[s] in appreciable deterrence.'" *Id.* at 141 (quoting *Leon*, 468 U.S. at 909) (internal quotation marks omitted and cleaned up)). Accordingly, "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id.* at 144. ‼

! In considering the deterrent benefits of exclusion, the Supreme Court has directed lower courts to focus on the "culpability of the law enforcement conduct" at issue. *Id.* at 143. "[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id.* at 144. If police "conduct involves only simple, 'isolated' negligence," however, or if police have acted "with an objectively 'reasonable good-faith belief' that their conduct is lawful," the remedy of exclusion is not warranted. *Davis v. United States*, 564 U.S. 229, 238 (2011) (quoting respectively *Herring*, 555 U.S. at 137, and *Leon*, 468 U.S. at 909). "[D]eterrence benefits of exclusion 'var[y] with the culpability of the law enforcement conduct' at issue." *Id.* (quoting *Herring*, 555 U.S. at 143).

The sole purpose of the exclusionary rule, which is a "judicially created remedy" that bars the government from introducing evidence obtained through illegal searches and seizures, is to deter future law enforcement officers from violating the Fourth Amendment. *Id.* at 237–38 (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). The exclusionary rule is not absolute, as the Supreme Court has "repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation." *Herring*, 555 U.S. at 141 (citing *Leon*, 468 U.S. at 905–06). Because "[e]xclusion exacts a heavy toll on both the judicial system and society at large," it is only appropriate where "the deterrence benefits of suppression . . . outweigh its heavy costs." *Davis*, 564 U.S. at 237. Finally, as the Supreme Court has recognized, "[s]uppression of evidence . . . has

6

always been our last resort, not our first impulse." *Hudson v. Michigan,* 547 U.S. 586, 591 (2006).

The Sixth Circuit has interpreted the *Herring* test as a "balancing test" in which "the benefits of deterrence must outweigh the costs" of suppression. *United States v. Master,* 614 F.3d 236, 243 (6th Cir. 2010) (quoting *Herring,* 555 U.S. at 141). In making this determination, the Court must examine the officers' actions to "assess 'the efficacy of the [exclusionary] rule in deterring Fourth Amendment violations in the future" and "analyze whether 'the benefits of deterrence . . . outweigh the costs' to the justice system of letting culpable individuals go free." *United States v. Godfrey,* 427 F. App'x 409, 411 (6th Cir. 2011) (quoting *Herring,* 555 U.S. at 141).

"[T]he decision to exclude evidence is divorced from whether a Fourth Amendment violation occurred." *Master,* 614 F.3d at 242. When law enforcement is "responsible for the unconstitutional error, suppression is necessary only if the police conduct is 'deliberate, reckless, or grossly negligent . . ., or in some circumstances [due to] recurring or systemic negligence.'" *Godfrey,* 427 F. App'x at 411 (quoting *Herring* 555 U.S. at 144). The analysis in *Herring* favors "preserving evidence for use in obtaining convictions, even if illegally seized, than toward excluding evidence in order to deter police misconduct unless the officers engage in 'deliberate, reckless, or grossly negligent conduct.'" *Master,* 614 F.3d at 243 (quoting *Herring,* 555 U.S. at 144). Moreover, "[a]n error in judgment or a mistake that is not systematic does not amount to being deliberate, reckless, or grossly

7

negligent." *United States v. Master*, 491 F. App'x 593, 596 (6th Cir. 2012) (citing *Godfrey*, 427 F. App'x at 412−13).

**B.    The R&R**

Against this legal backdrop, a closer review of the magistrate judge's R&R is in order.  In addressing the motion to suppress, the magistrate judge examined the issues presented in three sections: (1) whether the warrantless search of defendant's backpack falls within the search incident to arrest exception to the warrant requirement; (2) whether the contents of the backpack would have been inevitably discovered during an inventory search; and (3) whether the good faith exception to the exclusionary rule applies [Doc. 57, pp. 10−11].

Regarding the search incident to arrest issue, Judge Poplin found that the KPD officers could not properly search defendant's backpack incident to his arrest because he was detained in the back of the patrol car when the officer unzipped the backpack [*Id.* at 12].  In the substantive analysis, the government conceded that the search incident to arrest exception did not apply to the search of defendant's backpack [*Id.* at 12 (citing Doc. 26, pp. 5, 7–8)].

As to the issues of inevitable discovery and the inventory search, Judge Poplin determined that while the government did show that the KPD has procedures directing officers to take custody of an arrestee's property that is on the arrestee's person at the time of arrest, the government did not show the policy for inventorying property once it is in police custody [*Id.* at 15].  Specifically, at the evidentiary hearing, the government

8

introduced General Order 2.3 for searching and transporting prisoners and General Order 5.9 for warrantless searches, but it did not introduce General Order 7.3 relating to property management [*Id.* at 15–18]. Therefore, Judge Poplin found that "[i]n the absence of any guiding policies on inventory searches, the Court cannot find the search of the backpack conformed to KPD policies or that the contents of the backpack would have been inevitably discovered" [*Id.* at 18].

Moving to the good faith analysis, Judge Poplin analyzed the doctrine under the path of search incident to arrest, and the alternative path of inevitable discovery through an inventory search. After finding a Fourth Amendment violation under both paths, Judge Poplin concluded that the evidence obtained from defendant's backpack should not be suppressed under the good faith exception after performing the balancing test established by the Supreme Court in *Herring* [*Id.* at 18–22]. In reaching this determination, Judge Poplin relied upon Sixth Circuit decisions discussing the *Herring* balancing test, including the two *Master* decisions and the *Godfrey* decision [*Id.*].

First, Judge Poplin explained that officers needed to remove the backpack from defendant's person at the time of his arrest before placing him in the patrol car in compliance with General Order 2.3 [*Id.* at 21]. She also noted that after placing him in the patrol car, officers sought to properly process the items seized from defendant and began to inventory the contents of the backpack in which they immediately discovered the gun upon unzipping it [*Id.*]. Judge Poplin specifically determined: "Officer Bradley's erroneous belief that he could search the backpack incident to Defendant's arrest does not

negate good faith. 'An error in judgment or a mistake that is not systematic does not amount to being deliberate, reckless, or grossly negligent.'" [*Id.* (citing *Master*, 491 F. App'x at 596)].

Second, Judge Poplin determined that "the inventory exception seemingly applies" based on Officer Bradley's testimony that, because defendant had been arrested, all property seized from him and not of evidentiary value would be inventoried pursuant to the KPD policy and transported with him to the Knox County jail [*Id.* at 22]. Then, she found that she was "constrained to find a Fourth Amendment violation because the Government did not introduce the KPD's inventory policies, thereby preventing the Court from analyzing whether the policy limited officer discretion and was followed" and further she "discern[ed] no culpability on the part of law enforcement for this omission, and thus, no deterrent benefit from suppression" [*Id.*].

After conducting the *Herring* balancing test, Judge Poplin concluded that the evidence seized from defendant's backpack should not be suppressed and therefore she recommended that the motion to suppress be denied [*Id.*]. In doing so, she reasoned: "The [Court] balances the little to no deterrent benefit from exclusion against the significant cost of suppression. Defendant had a firearm and multiple controlled substances in his backpack. The cost of suppression is therefore high. Accordingly, the balance tips in favor of admitting the evidence at trial" [*Id.*].

Defendant agrees with the magistrate judge's conclusions that the search of his backpack was unconstitutional and that the inevitable discovery exception to the

10

exclusionary rule does not apply [Doc. 67, p. 1]. However, defendant raises several objections to Judge Poplin's determination that the good faith exception applies, arguing that such a finding "circumvents the exclusionary rule, contravenes clear Supreme Court precedent, and if correct, eviscerates the exclusionary rule in its entirety" [*Id.*].

In ruling on defendant's objections, the Court therefore focuses on whether the good faith exception applies to save the KPD officers' unconstitutional search of defendant's backpack at the time of his arrest. Given that the objections are interrelated and at times overlapping, the Court will set forth its analysis without compartmentalizing each objection.

## C. Analysis

Defendant objects that the magistrate judge erroneously relied on the decisions of *Leon*, *Herring*, *Master*, and *Godfrey* in support of her determination that the good faith exception applies. According to defendant, *Leon*, *Herring*, *Master*, and *Godfrey* are factually distinguishable and therefore inapposite. Defendant maintains that "*Leon* and cases which initially followed it involved errors of neutral parties," in contrast to the instant case where the officers are the "cause of the constitutional violation," such that they should not benefit from the good faith exception [Doc. 67, p. 3]. Defendant asserts that "*Herring* and *Leon* stand for the conclusion that the exclusionary rule should not apply when the officers are not at fault the constitutional violation, because excluding the evidence would not deter illegal conduct *on the part of the officers*" [*Id.* (emphasis in original)]. He also takes issue with the magistrate judge's statement in the R&R that "the officers acted

11

in good faith *to maintain the evidence on the scene*," stating there is no case to support the statement [*Id.* at 2 (emphasis in original) (quoting Doc. 57, p. 2)].

Essentially, defendant objects that *Leon*, *Herring*, *Master*, and *Godfrey* involve mistakes of fact not attributable to the law enforcement agents conducting the search, whereas in this case, the KPD officers caused the constitutional violation by way of their own failure to comply with Supreme Court law that did not permit the search of his backpack [*Id.* at 11]. Defendant argues that the KPD officers searched his backpack on the hood of the police cruiser, while he was handcuffed and secured in the backseat of the police cruiser, in a conscious, deliberate, and intentional manner [*Id.* at 4–6]. They did this, according to defendant, in the face of clear Supreme Court precedent prohibiting them from searching his backpack incident to his arrest,[2] which the officers had a duty to know. Therefore, defendant contends it was erroneous for the magistrate judge to apply the good faith exception to the KPD officers' conduct in such a scenario [*Id.*].

Notably, defendant's post-hearing brief [Doc. 38] presented the same argument to the magistrate judge. Citing both *Leon* and *Herring*, defendant previously argued that those cases dealt with, respectively, an invalid warrant [resulting from a magistrate's actions] and mistaken information resulting from a judicial employee's actions [*Id.* at 11].

---

[2] Judge Poplin observed that the officers' search of defendant's backpack occurred more than 10 years after the Supreme Court decided *Arizona v. Gant*, 556 U.S. 332 (2009) [Doc. 57, p. 20]. In *Gant*, the Supreme Court held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 556 U.S. at 351.

12

Defendant asserted that the KPD officers' "actions were deliberate and not lawful due to their own actions and not the mistakes of anyone else," an argument that he echoes in his objections to the R&R [*Id.*; *compare* Doc. 67]. The government's responsive post-hearing brief stated that the KPD officers identified defendant as having five outstanding warrants and arrested and searched him incident to arrest [Doc. 26, pp. 11–12]. Relying on both *Herring* and *Godfrey*, the government asserted that the officers acted reasonably and in good faith, maintaining that any unconstitutional conduct was not sufficiently deliberate such that exclusion would provide meaningful deterrence of similar conduct [*Id.* at 10–11].

As the Court noted earlier, if "objections merely restate the party's arguments raised . . . previously [and] addressed by the magistrate judge, then the Court may deem the objections waived." *Johnson*, 2014 WL 7272326, at *2 (citing *VanDiver*, 304 F. Supp. 2d at 937). Nevertheless, the Court will undertake a review of the factual underpinnings of *Leon*, *Herring*, *Master*, and *Godfrey* to address defendant's objections, as he further develops the same argument raised previously before the magistrate judge.

Before undertaking this review, the Court pauses to address the government's response to defendant's objections on this point. The government reasserts its position that the law enforcement officers did not make a mistake as to the state of the law because the Sixth Circuit has not extended *Gant* to containers outside of a vehicle, *i.e.* backpacks [Doc. 74, pp. 6–10; *compare* Doc. 42, pp. 6–10]. Suffice to say that the Court finds this argument to be inconsistent with the government's concession from the beginning that the search of defendant's backpack was not a proper search incident to arrest [*see* Doc. 26, pp. 5, 8].

13

Moreover, to the extent that the government is now attempting to register an objection of its own to the R&R, the Court notes that the time for filing objections has long passed, *see* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(2), even after the Court granted the government's motion for both parties to receive an extension to file objections [Doc. 66].

Now, the Court returns to its review of the case law at issue. In *Leon*, the Supreme Court held that the exclusionary rule was inapplicable where officers acted "in objectively reasonable reliance" on a search warrant issued by a detached and neutral magistrate that was subsequently found to be invalid. 468 U.S. at 922. The *Herring* case presented the Supreme Court with facts about a mistake in a county's computer records regarding outstanding warrants that led an officer in the field to arrest the defendant and discover drugs and a firearm. 555 U.S. at 137–38. The *Herring* Court did not find suppression of the evidence was warranted where the recordkeeping mistake was the result of negligence, "rather than systemic error or reckless disregard of constitutional requirements." *Id.* at 147.

*Master* involved a defective warrant on the basis that the general sessions judge who signed the search warrant application presided in a different county from the defendant's residence. 614 F.3d at 238–39. The Sixth Circuit remanded the case to the district court so that the "balancing test" established by the *Herring* court could be conducted, directing the lower court to "re-examin[e] the facts and balanc[e] the interests as required by *Herring*." *Id.* at 243. Following the remand, the Sixth Circuit agreed with the district court's determination that suppression was not appropriate where the defendant failed to

14

prove that the officer "had knowledge of material facts that would make the search unconstitutional." *Master*, 491 F. App'x at 597. The court explained that the *Herring* balancing test revealed that the officer's actions were "neither deliberate nor sufficiently culpable that suppression would be warranted in order to deter similar behavior in the future." *Id.*

*Godfrey* involved an officer making a typographical error upon entering the license number of a vehicle he was following into the mobile data terminal in his patrol car, leading to a warning indicating that the vehicle's owner (not Godfrey) had an outstanding warrant, with Godfrey ultimately stopped, arrested, and charged with being a felon in possession of a firearm. 427 F. App'x at 410–11. Affirming the district court's denial of the motion to suppress, the Sixth Circuit applied the balancing test articulated in *Herring* and applied in *Master*, to find that the good faith exception cures any unconstitutional police action which at most was negligent. *Id.* at 412–13.

In comparison to *Leon* and the other cases involving factual mistakes mostly by non-law enforcement officers, defendant objects that the KPD officers acted consciously, deliberately, and intentionally to search his backpack on the hood of the cruiser while he was handcuffed and secured in the backseat of the cruiser, in violation of long-standing Supreme Court law that does not permit a search incident to arrest in that scenario. Defendant complains that the R&R relies on language from *Leon* and applies to the *Herring* balancing test "to a context never approved by the Supreme Court or the Sixth Circuit–namely to save officers from their own unconstitutional conduct" [Doc. 67, p. 2].

While defendant's argument that *Leon*, *Herring*, *Master*, and *Godfrey* all involve different factual scenarios than presented here is well taken, the Court finds that defendant's position that the good faith exception does not apply is unpersuasive. His objections fail to identify what standard the magistrate judge should have used in assessing whether the good faith exception applies in this context, and the issue about good faith was explored in the parties' earlier briefing. He is dissatisfied with the precedent in this Circuit,[3] but he has not directed the Court to authority that compels a different result. Therefore, the Court perceives the *Herring* balancing test as the correct standard under current jurisprudence. The Court is not convinced by defendant's disagreement with the magistrate judge conducting the *Herring* balancing test, relying on the *Master* and *Godfrey* decisions, and ultimately concluding that the good faith exception applies to save the unconstitutional search of defendant's backpack.

Relatedly, the Court is not persuaded by defendant's objections that even if the *Herring* balancing test applies, "the balance of interests tips heavily in favor of granting [his] motion to [suppress]" [*Id.* at 7]. He asserts that the R&R "sizes up the 'mistake' of the officers as 'an erroneous belief that they could search the backpack incident to . . . arrest'" [*Id.* (quoting Doc. 57, p. 21)]. Defendant maintains that the magistrate

---

[3] Where a defendant "merely disagrees with controlling precedent, there is no proper objection . . . for the Court to review *de novo*." *United States v. Deakins*, No. 1:21-CR-58, 2023 WL 181089, at *1 (E.D. Tenn. Jan. 13, 2023) (citing *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (holding *de novo* review by the district court only applies to matters involving disputed facts, not in situations where the petitioner only raises legal issues)). Nevertheless, the Court has undertaken a *de novo* review of this matter.

16

judge's recommendation to not suppress the evidence "rewards the unconstitutional search in this case by a significant number of KPD officers, none of which appeared to be knowledgeable of the changes in the law from nearly 15 years ago which occurred in *Arizona v. Gant*" [*Id.* at 8]. He suggests that "[t]here is no reason to believe that the ruling in *Gant* is being applied by the KPD in all the day-to-day encounters that do not come before this Court" and "[w]ithout holding KPD accountable for their unconstitutional conduct, there is no incentive for the KPD to amend its procedures regarding searches incident to arrest" [*Id.*]. Finally, defendant argues that such reliance on incorrect law is "systemic where case law that is nearly 15 years old is not known by the number of officers who were present" and therefore "at least grossly negligent" on the part of the officers and "at least grossly negligent, if not reckless or deliberate" on the part of KPD as a law enforcement agency responsible for training the officers [*Id.*].

But defendant cites no Sixth Circuit authority drawing the distinctions he seeks to make. The Court's own research has revealed that authority in the Ninth Circuit "distinguishes between mistakes of fact and mistakes of law because mistakes of law can be deterred more readily than mistakes of fact." *United States v. Song Ja Cha*, 597 F.3d 995, 1005 (9th Cir. 2010) (citing *United States v. Lopez-Soto*, 205 F.3d 1101, 1106 (9th Cir. 2000) (concluding that "there is no good-faith exception to the exclusionary rule for police who do not act in accordance with governing law" and emphasizing that "[t]o create [such] an exception . . . would defeat the purpose of the exclusionary rule, for it would remove the incentive for police to make certain that they properly understand the law that

17

they are entrusted to enforce and obey")). The court also noted that "*Herring* did not discuss mistakes of law, and our cases holding that the good-faith exception does not apply to mistakes of law are still good law." *Id.* at 1005 n.8.

In *Song Ja Cha*, the court was presented with deliberate, culpable, and systemic police conduct where the officers seized the Chas' house for a minimum of 26.5 hours while Mr. Cha waited outside for most of that time and was not allowed to go inside to get his diabetes medication for four hours. *Id.* at 1005−06. In addition, the officers, who displayed a nonchalant attitude, were not trained that they must obtain a warrant reasonably quickly after a premises has been seized. *Id.* Therefore, the court found that the "police errors . . . were much more troubling that the negligence in *Herring*" and therefore such conduct in reckless disregard of the reasonable seizure requirement of the Fourth Amendment was "sufficiently culpable that . . . deterrence is worth the price paid by the system." *Id.* at 1005 (quoting *Herring*, 555 U.S. at 144).

Defendant has not cited *Song Ja Cha* or any other case in support of his position that a mistake of law should not receive good faith protection. The Court is not bound by the law of a sister circuit, and even so the facts involved in *Song Ja Cha* are distinguishable from the case at hand. Here, Officer Bradley testified that he searched defendant's backpack incident to his arrest [Doc. 57, p. 13 n.7]. As noted by Judge Poplin, this was an erroneous belief by the officer [*Id.* at 21]. However, Officer Bradley also testified that following defendant's arrest, all property taken from defendant that was not of evidentiary value would have been transported with him to the jail [*Id.* (citing Doc. 35, p. 20)]. The

18

officer testified that defendant's property would have been inventoried pursuant to KPD policy, and the contents of his backpack were included on the KPD Property Inventory Report [*Id.* at 13−14 (citing Doc. 35, pp. 20−21; Ex. 5)]. On cross-examination, Officer Bradley testified that he "was searching for property to be inventoried" when he unzipped defendant's backpack and when he saw the firearm he knew that the backpack contained evidence that needed to be "processed" [*Id.* at 14 (citing Doc. 35, pp. 38−40)]. Under the totality of these circumstances, the Court finds that Officer Bradley's mistaken belief about the law and his belief that he was obligated to inventory the contents of defendant's backpack at the scene does not amount to conduct that would be considered sufficiently deliberate, culpable, or systemic. Nor does it rise to the level of culpability in *Song Ja Cha*.

In addition, defendant objects that application of the exclusionary rule would provide deterrence to KPD and other law enforcement agencies with policies and procedures in place that violate clearly established federal law [*Id.* at 9]. Defendant urges that "forcing KPD to update its established policies and procedures such that they align with Supreme Court case law provides deterrence because it resolves a systematic issue." In other words, according to defendant, "[g]ood faith applies to negligent errors which were reasonably relied upon by an officer in a single instance, not to systemic and ongoing behavior of a law enforcement agency that violates the Fourth Amendment" [*Id.*]. Defendant complains that the magistrate judge's analysis was "minimal" when she weighed the social costs of suppression in "two sentences" and created a "near-bright line rule [that] if the court believes that the defendant is guilty, the exclusionary rule does not

19

apply" [*Id.* at 10]. Appealing to "bedrock principles," such as a defendant's "presumption of innocence" and the effect of a court "legitimizing the conduct which produced the evidence," defendant objects that his case calls for the judicial remedy of excluding the evidence because it is "imperative to hold law enforcement responsible for violating the law" [*Id.* at 9–10]. The government's response reinforces the point that "the ultimate touchstone of the Fourth Amendment is reasonableness" and "[t]o be reasonable is not to be perfect" [Doc. 74, p. 10 (quoting *Heien v. North Carolina*, 574 U.S. 54, 60–61 (2014) (internal quotation marks omitted and citation omitted))].

While defendant characterizes the KPD officers' conduct as reckless, deliberate, grossly negligent, or systemic, and appeals to the Court's sensibilities with respect to bedrock principles that have shaped constitutional law, his objections do not compel a different result. Here, while it is true that the KPD officers were mistaken about the law, the Court finds that defendant has not factually equated any law enforcement action, either by the KPD officers at the scene or by KPD as a law enforcement agency responsible for their training, with reckless, deliberate, or grossly negligent conduct that would tip the balance in favor of suppression. *See Herring*, 555 U.S. at 144 (the exclusionary rule is meant to "deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence"). Indeed, there is no evidence in the record that there was a systemic disregard of rights within the KPD, or a failure to properly train. *See id.* Conjecture on the part of defendant is not enough; there must be proof, and here the proof is lacking. It bears repeating that "[a]n error in judgment or a mistake that is not systematic

does not amount to being deliberate, reckless, or grossly negligent," *Master*, 491 F. App'x at 596, and suppression of evidence is to be considered a "last resort, not [a] first impulse," *Hudson*, 547 U.S. at 591. Accordingly, the Court finds that the good faith exception can still apply where the record is devoid of evidence of reckless, deliberate, grossly negligent, or systemically negligent conduct, and thus there is little to no deterrent benefit from exclusion against the significant cost of suppression.

Turning to his final objection, defendant argues that "the good faith exception does not apply when the Court does not fault law enforcement for the government's failure to meet a burden of proof" as to the inventory search exception [Doc. 67, p. 7]. In this regard, defendant maintains that the magistrate judge did the "heavy lifting" for the government, which failed to meet its burden of proving the applicability of the good faith exception. According to defendant, the R&R cited no cases, nor can it, for "holding that the good faith exception applies when prosecution attorneys fail to meet their burden of proof." Defendant complains that the magistrate judge "made arguments justifying the good faith exception based on arguments that the government did not make, and on extrapolations from evidence that the government never presented" [*Id.*]. Defendant submits that the Court has a "duty to rely only on evidence presented to it by the parties" to avoid the risk of violating "the principle of party representation and judicial restraint" [*Id.* (citing *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020))].

In *Sineneng-Smith*, the Supreme Court described the Ninth Circuit panel's decision, which was vacated and remanded, as a "takeover of the [defendant's] appeal," wherein the

21

panel intervened to order further *amicus* briefing and invited the *amicus* groups to brief First Amendment arguments as to other parties which the defendant had never advanced. 590 U.S. at 379–80. In discussing the background underlying the principle of party representation, the Supreme Court noted: "[A]s a general rule, our system 'is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.' In short: '[C]ourts are essentially passive instruments of government.' They 'do not, or should not, sally forth each day looking for wrongs to right. [They] wait for cases to come to [them], and when [cases arise, courts] normally decide only questions presented by the parties.'" *Id.* at 375–76 (citations omitted).

As stated above, the magistrate judge noted that the "inventory exception seemingly applies" based upon Officer Bradley's testimony regarding his belief that all property seized from defendant on arrest and not of evidentiary value would be inventoried pursuant to KPD policy [Doc. 57, p. 22]. The magistrate judge ultimately determined that "[i]n the absence of any guiding policies on inventory searches, the Court cannot find the search of the backpack conformed to KPD policies or that the contents of the backpack would have been inevitably discovered" [*Id.* at 18]. The Court cannot construe Judge Poplin's decision as violating the principle of party representation. Far from it, Judge Poplin carefully analyzed the evidence before her, and noted what was not before her, in reaching her decisions in light of the applicable law. Moreover, the Court would note that defendant has certainly been represented by competent counsel, who properly framed the issues

22

before Judge Poplin and has, to some degree, repeated them again in zealous representation of their client.

In reviewing the record of this case under the applicable Sixth Circuit law, and after giving careful consideration to defendant's objections, the Court ultimately agrees with Judge Poplin's analysis in the R&R and finds defendant's objections to be without merit. For all of the reasons set forth above, defendant's objections are **OVERRULED**.

## IV. Conclusion

Accordingly, upon a *de novo* review of the record and the law, the Court finds that the recommendations contained in the R&R are correct. Thus, defendant's objections [Doc. 67] are **OVERRULED**. The Court **ACCEPTS in whole** the R&R [Doc. 57] and incorporates it into this Memorandum Opinion and Order. The Court hereby **DENIES** defendant's "Motion to Suppress as Evidence the Contents of a Backpack Seized and Searched on October 25, 2021" [Doc. 20].

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE